UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

LYNNE ROSE, a minor by next friend, The
Children's Rights Initiative, Inc.,

                            **Plaintiff,**

                            v.                            5:98-CV-1882
                                                          (FJS/GHL)

JIM ZILLIOUX,

                            **Defendant.**

_____

**APPEARANCES**                                                **OF COUNSEL**

**THE CHILDREN'S RIGHTS**              **A.J. BOSMAN, ESQ.**
**INITIATIVE, INC.**
258 Genesee Street, Suite 301
Utica, New York 13502
Attorneys for Plaintiff

**JAMES ZILLIOUX**                                   **NO APPEARANCE**
Whitesboro, New York 13492
Defendant *pro se*

**SCULLIN, Senior Judge**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

      Currently before the Court is Plaintiff's motion for a default judgment on the issue of damages against Defendant Zillioux.

### II. BACKGROUND

      On October 6, 2004, Plaintiff requested and the Clerk of the Court entered Notice of Default against Defendant Zillioux because he had not answered or otherwise responded to

Plaintiff's amended complaint, which Plaintiff had personally served on him on June 24, 2004. By Order dated October 11, 2006, Magistrate Judge Lowe instructed Plaintiff to move for entry of a default judgment against Defendant Zillioux by November 1, 2006, or the Court would dismiss this action. *See* Dkt. No. 104. In compliance with that Order, Plaintiff filed a motion for entry of a default judgment against Defendant Zillioux on November 1, 2006. *See* Dkt. No. 105.

In a Memorandum-Decision and Order dated January 29, 2007, this Court, among other things, (1) granted Plaintiff's motion for entry of a default judgment against Defendant Zillioux on her state-law claim of assault and battery insofar as it pertained to the issue of liability; (2) granted Plaintiff's motion for entry of a default judgment against Defendant Zillioux on her state-law defamation claim insofar as it pertained to the issue of liability; (3) instructed Plaintiff to file affidavits and other documentation to support her claim for damages within twenty days of the date of the Order; and (4) instructed Plaintiff to serve a copy of the Order and all additional papers that she filed with the Court upon Defendant Zillioux at his last known address and to file an affidavit of service demonstrating that she had done so. *See* Memorandum-Decision and Order dated January 29, 2007, at 8-9.[1]

On February 27, 2007, Plaintiff filed an affidavit in support of her motion for a default judgment, *see* Dkt. No. 111; and on February 28, 2007, Plaintiff filed an affidavit of service

---

[1] In its January 29, 2007 Memorandum-Decision and Order, the Court also instructed Plaintiff either to inform the Court in writing within ten days of the date of the Order that she did not intend to seek entry of a default judgment against Defendant Zillioux on her § 1983 claims or to file papers to support her argument that the rule-of-the case doctrine did not apply to this case and reserved decision on Plaintiff's motion for attorney's fees under § 1988 until the Court had the opportunity to review Plaintiff's submissions regarding the continued viability of her § 1983 claims. *See* Memorandum-Decision and Order dated January 29, 2007, at 8-9. Since Plaintiff did not comply with these instructions, the Court concludes that she has abandoned her § 1983 claims and her motion for attorney's fees under § 1988.

demonstrating that she had served the Court's January 29, 2007 Memorandum-Decision and Order and her affidavit in support of her motion for a default judgment on Defendant Zillioux, *see* Dkt. No. 112.

### III. DISCUSSION

**A.     Allegations that form the basis for Plaintiff's claim for damages**

Based upon a review of the record, the following facts form the basis for Plaintiff's claim for damages. Plaintiff first began to visit Lock 18 of the New York State Canal System, located in Utica, New York, in the summer of 1996. She alleges that during that summer she was alone with Defendant Zillioux on one occasion, at which time she sat on his lap. *See* Transcript of Deposition of Lynne Rose, dated February 9, 2000 ("Rose Tr."), at 25-26. Plaintiff did not tell anyone about this incident. *See id.* at 73.

In the summer of 1997, Plaintiff asserts that she visited Lock 18 almost every day when Defendant Zillioux was working and helped him with odd jobs at the lock. *See id.* at 20. On several occasions during that summer, people saw Plaintiff in the lockhouse, which is a structure containing an office, a bathroom and a storage space. *See id.* at 51.

In mid to late August 1997, sexual contact between Plaintiff and Defendant Zillioux occurred for the first time. *See id.* at 32-33. Plaintiff did not tell anyone what had occurred. *See id.* at 38, 40. She returned to Lock 18 the next week when she knew that Defendant Zillioux would be there. *See id.* at 41. Subsequent occurrences of physical and sexual contact occurred, generally in the lockhouse and at least once in Defendant Zillioux's car. *See id.* at 79, 83.

Plaintiff's parents were aware that she was spending time at Lock 18 with Defendant

Zillioux. On one occasion, Defendant Zillioux told Plaintiff that his supervisor would not permit her to hang around Lock 18, and Plaintiff's mother called him to complain that Plaintiff should not be forbidden to go there. In addition, on one occasion when Plaintiff's mother ordered her not to go to Lock 18, she went any way. *See id.* at 71. Plaintiff's parents also knew that Defendant Zillioux was driving Plaintiff home from Lock 18, *see id.* at 77-78; they allowed him to take her to a county fair, *see id.* at 79; and they even invited him to their home for a barbeque approximately two days before he was arrested, *see id.* at 104-06.[2]

Furthermore, Plaintiff alleges that Defendant Zillioux

> deliberately, intentionally, and repeatedly sexually touched, abused, molested and sodomized [her,] . . . repeatedly fondled and forcibly kissed and held [her], forced [her] to sit on his lap, held [her] down on the desk, fondled and touched [her] breasts and buttocks, inserted fingers in [her] vagina, placed his penis on [her] vagina, exposed himself to [her], placed his mouth on [her] vagina and breasts, lied to [her], lied about [her], telephoned and visited [her] at her home, and then blamed [her] for his acts . . . .

*See* Amended Complaint at ¶ 19.

Other than one incident in 1996, it appears that Defendant Zillioux's sexual contact with Plaintiff took place during a one-month period – August to September 1997.[3] According to Plaintiff, during that time, Defendant Zillioux sexually assaulted her on many occasions, and she continues to suffer emotional trauma as a result of his conduct.

---

[2] Defendant Zillioux was arrested on September 13, 1997, and charged with committing sodomy in the third degree. On June 29, 1998, Defendant Zillioux pled guilty to sexual abuse in the second degree, a misdemeanor. He was sentenced to three years probation and was assessed a $1,000 fine and a $90.00 surcharge.

[3] Although in her amended complaint Plaintiff asserts that this activity occurred from July 1996 through September 1997, *see* Amended Complaint at ¶ 19, she later stated that the sexual contact did not occur for the first time until August 1997, *see* Rose Tr. at 32-33.

**B.      Plaintiff's submissions in support of her claim for damages**

In its January 29, 2007 Memorandum-Decision and Order, the Court noted that Plaintiff sought $5,000,000 in compensatory damages and $5,000,000 in punitive damages. *See* Memorandum-Decision and Order dated January 29, 2007, at 7. The Court explained, however, that it could not accept Plaintiff's statement of damages because that would not satisfy the Court's obligation to ensure that the damages were appropriate. *See id.* (citations omitted). Moreover, the Court stated that, under Rule 55(b)(2) of the Federal Rules of Civil Procedure, the Court could conduct a hearing to determine the amount of damages but that it was not necessary to do so "'as long as [the Court could] ensure that there [was] a basis for the damages specified in the default judgment.'" *See id.* (quotation omitted). The Court therefore instructed Plaintiff, for her convenience and in the interest of conserving judicial resources, "to submit affidavits and other documentation to support her claims for damages." *See id.* at 8. Finally, the Court stated that, "[i]f, after reviewing these submissions, the Court [found] that there is still insufficient evidence upon which to base an award of damages, the Court [would] schedule a hearing at that time." *See id.*

Plaintiff, who is no longer a minor, filed an affidavit in support of her motion for default judgment on the issue of damages. In that affidavit, she states that her name is Melissa Hope. *See* Affidavit of Melissa Hope, dated February 27, 2007, at ¶ 1. She also asserts that Defendant Zillioux sexually molested and violated her when she was thirteen and fourteen years old and that he used her naivety and trust to obtain access to her and subject her to lifelong humiliation and harm. *See id.* at ¶¶ 2-3. Plaintiff further contends that she "understand[s] [that she was left with] child sexual abuse syndrome which caused [her] to feel dirty, ashamed, used, cheated and [that

she has] struggled with low self esteem ever since . . . ." *See id.* at ¶ 6. Moreover, she states that "[t]he sexual assault damaged [her] relationships with [her] mother and [her] father . . . [and that] her] parents divorced 4 months after [she] disclosed what had happened to [her] in part because of what happened to [her]." *See id.* at ¶ 7. She also claims that, "[a]s an adult, [she has] difficulty trusting men, ha[s] sexual anxiety, and it has affected every area of [her] life." *See id.*

Additionally, Plaintiff claims that "[t]he emotional pain that [she has] long endured as a result of [her] molestation caused [her] nightmares, insomnia, fear, anxiety, stress and stomachaches . . . [and that] [t]o this day, [she] still suffer[s] from anxiety/panic attacks and fear of new or changed situations which [she] understand[s] are related to the trauma [she] went through with [Defendant Zillioux]." *See id.* at ¶ 8. Furthermore, Plaintiff notes that she is "currently living in low income Section 8 public housing[;] [she] married an alcoholic who got [her] pregnant and [she is] now separated from him; [she] work[s] as a home aide for an elderly blind woman[;] and [she has] two children and some bad memories." *See id.* at ¶ 10.

Finally, she states that she understand that "the court cannot fully appreciate or know how to fully compensate [her and that] all that can be done at this point is to try and find some comfort in standing up and speaking the truth about what happened to [her] even though [she] was afraid." *See id.* at ¶ 12.[4] In sum, she asks "the court to set this judgment in an amount that values and respects [her] as [she] was as a child and a human being, something that Jim Zillioux

---

[4] Plaintiff also states that she understands that "the Canal Corporation will probably not pay any judgment [she] receive[s] against James Zillioux . . . [and that] The Children's Rights Initiative will receive one third of any amount [she is] able to recover. *See* Affidavit of Melissa Hope, dated February 27, 2007, at ¶ 13. This information is not relevant to the Court's determination of the amount of damages that would compensate Plaintiff for the injury she suffered at the hands of Defendant Zillioux.

never did." *See id.* at ¶ 15.

Plaintiff's affidavit is not very helpful to the Court as a means to determine the appropriate amount of damages to award her on her state-law claims for assault and battery and defamation against Defendant Zillioux. Although the Court specifically instructed Plaintiff to "file affidavits and **other documentation** to support her claim for damages . . .," *see* Memorandum-Decision and Order dated January 29, 2007, at 9 (emphasis added), the only documentation that Plaintiff provided to the Court was her affidavit, which contains her subjective recitation of the emotional harm that she has suffered.

After reviewing the very limited amount of information that Plaintiff has provided in support of her claim for damages, the Court concludes that it still has insufficient evidence upon which to base an award of damages. Accordingly, the Court finds it necessary to schedule a hearing regarding this issue.

## IV. CONCLUSION

After carefully reviewing the entire record in this matter, Plaintiff's submissions and the applicable law, and for the reasons stated herein, the Court hereby

**ORDERS** that Plaintiff shall appear for a hearing on the issue of damages on **Wednesday, July 23, 2008, at 2:00 p.m. at the United States Courthouse** in **Syracuse, New York**; and the Court further

**ORDERS** that, on or before **July 16, 2008**, Plaintiff shall file with the Court a list of the witnesses who will testify at the hearing and a summary of their expected testimony and a list of the exhibits that she intends to use at the hearing.

**IT IS SO ORDERED.**

Dated: June 12, 2008
       Syracuse, New York

                                        Frederick J. Scullin, Jr.
                                        Senior United States District Court Judge