UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

LYNNE ROSE,[1] a minor, by next friend,
The Children's Rights Initiative, Inc.,

                        **Plaintiff,**

                v.                                  5:98-CV-1882
                                                   (FJS/GHL)
JAMES ZILLIOUX,

                        **Defendant.**
_____

| APPEARANCES | OF COUNSEL |
|---|---|
| **THE CHILDREN'S RIGHTS INITIATIVE, INC.**<br>258 Genesee Street, Suite 301<br>Utica, New York 13502<br>Attorneys for Plaintiff | **A. J. BOSMAN, ESQ.** |
| **JAMES ZILLIOUX**<br>Defendant *pro se* | **NO APPEARANCE** |

**SCULLIN, Senior Judge**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

      On July 23, 2008, the Court held a hearing to determine the appropriate amount of damages to award Plaintiff on her state-law claims of assault and battery and defamation against Defendant Zillioux.[2] At that hearing, Plaintiff testified about the harm she suffered and

---

    [1] Plaintiff's real name is Melissa Hope. At the time that she filed her complaint, she was a minor and filed the suit under the pseudonym "Lynne Rose" to protect her identity.

    [2] The Court previously granted Plaintiff's motion for a default judgment on the issue of Defendant Zillioux's liability for these claims. *See* Dkt. No. 108.

continues to suffer as a result of Defendant Zillioux's inappropriate sexual conduct against her in August and September 1997. In addition, Joyce Huyck, a Licensed Clinical Social Worker, testified about the impact that sexual assault and abuse can have on a child and offered her opinion about whether Plaintiff presented with symptoms of an adult survivor of childhood sexual abuse. At the conclusion of the hearing, the Court reserved decision. The following constitutes the Court's determination of the amount of damages to award to Plaintiff.

## II. DISCUSSION

### A.   Plaintiff's testimony[3]

In the summer of 1996, Plaintiff met Defendant Zillioux at Lock 18 of the New York State Canal System, where Defendant Zillioux was an employee of the New York State Canal Corporation. Defendant Zillioux befriended Plaintiff and asked her if she would like to come to Lock 18 regularly and go fishing with the other kids who were there. Plaintiff told Defendant Zillioux that she would; and, after that time, she often went to Lock 18. At some point during the summer of 1996, Plaintiff went into the Lockhouse with Defendant Zillioux, who, on one occasion, asked her to sit on his lap. Nothing else happened between Plaintiff and Defendant Zillioux that summer.

Plaintiff continued to visit Defendant at Lock 18 during the summer of 1997. At some point, he gave her a shirt and cap; and she did small chores at Lock 18, including painting and cleaning. Her parents knew that she was at Lock 18 and that she was helping Defendant

---

[3] The following is a summary of Plaintiff's testimony at the July 23, 2008 hearing as well as the information she provided in her affidavit and elsewhere in the record.

Zillioux.[4]

At some point in August 1997, Plaintiff's parents allowed her to go to the County Fair with Defendant Zillioux and his sons. Later that week when Plaintiff was at Lock 18, Defendant Zillioux approached Plaintiff in an inappropriate manner and continued to do so thereafter every time Plaintiff was at Lock 18, which was three to four times each week, until she returned to school in September, at which point the abuse stopped. At least on one occasion, he put his hands on her breasts and buttocks and stuck his fingers in her vagina. He also took his penis out of his pants and once tried to have intercourse with her.

Plaintiff did not tell her parents or anyone else about what Defendant Zillioux was doing to her. Defendant Zillioux told her not to tell anyone because her friends would think less of her. Her mother discovered the abuse when she found a letter in Plaintiff's backpack that Plaintiff had written to Defendant Zillioux, telling him that she wanted him to stop. Plaintiff's mother called Plaintiff's aunt, who told her to call the State Police. Plaintiff's mother and aunt picked Plaintiff up at school and took her to the State Police office where she made a statement against Defendant Zillioux. As a result of Plaintiff's statement, Defendant Zillioux was arrested.

For approximately one year after the abuse occurred, Plaintiff felt very insecure and had panic attacks, had difficulty with her self image, had low self-esteem, and had trouble sleeping and, when she did sleep, had nightmares.

Plaintiff continues to suffer from anxiety and panic attacks, which are triggered when she is in new and unfamiliar situations or surroundings. Plaintiff married an alcoholic from whom

---

[4] They also knew that Defendant Zillioux drove Plaintiff home from Lock 18, and they even invited him to their home for a barbeque in early September 1997.

she is now separated. She currently lives in an apartment, for which she pays rent based on her income. Plaintiff has three daughters, and she is afraid for them because she feels as if there is an unpreventible cycle of abuse – her mother was abused, she was abused, and she is afraid her daughters will be abused.

Finally, Plaintiff believes that, although no amount of money will make her whole, Defendant Zillioux should have to pay something for what he did.

**B.  Ms. Huyck's testimony**

The following is a summary of Ms. Huyck's testimony at the July 23, 2008 hearing.

Ms. Huyck currently works as a Clinical Social Worker for Family Services of the Mohawk Valley. She has expertise in the area of child sexual abuse. She met Plaintiff for the first time on July 17, 2008, and met with her for about one and one-half hours. She has not clinically treated Plaintiff, and she has based her assessment of Plaintiff's condition on what Plaintiff told her and her observations of Plaintiff. In Ms. Huyck's opinion, Plaintiff suffers from some of the symptoms of an adult survivor of childhood sexual abuse, such as anxiety, panic attacks, flash backs of abuse, and concerns about the safety of her children. In response to the Court's question, however, Ms. Huyck stated that Plaintiff's anxiety and depression could have resulted from other traumatic events but that Plaintiff's flashbacks were certainly related to the sexual abuse. Finally, Ms. Huyck stated that people suffer the effects of sexual abuse at different stages in their lives and these effects can be rekindled at different developmental stages in life. She opined that it is likely that Plaintiff will suffer the effects of abuse in the future, and she hopes that Plaintiff will get counseling when that occurs.

**C.    Damages Assessment**

Based upon Ms. Huyck's and Plaintiff's hearing testimony, Plaintiff's allegations in her complaint, her affidavit, and her deposition testimony, the Court finds that, other than one incident in the summer of 1996, the sexual abuse that Defendant Zillioux perpetrated on Plaintiff occurred on a regular basis from middle to late August 1997 to shortly after Labor Day of 1997, when Plaintiff returned to school.  The Court also finds that this abuse caused Plaintiff to suffer emotional and psychological harm in the form of low self-esteem, anxiety, and panic attacks, from which she currently suffers and is likely to continue to suffer for the unforeseeable future. The Court also notes that other traumatic incidents in Plaintiff's life, including the divorce of her parents and her marriage to an alcoholic, may have contributed to her emotional and psychological injuries.  It is impossible, however, for the Court to determine how much these unrelated incidents may have contributed to Plaintiff's current condition.

In light of Plaintiff's age at the time of the abuse – 13 to 14 years old – the frequency of that abuse over a period of three to four weeks, and the harm that Plaintiff has suffered as a result, the Court concludes that an award of damages in the amount of **$100,000.00** is appropriate under all the circumstances.

### III. CONCLUSION

According, for the above-stated reasons, the Court hereby

**ORDERS** that the Clerk of the Court shall enter judgment against Defendant Zillioux and in favor of Plaintiff in the amount of **$100,000.00 (one hundred thousand dollars)** in damages on her state-law claims and close this case.

**IT IS SO ORDERED.**

Dated: July 29, 2008
      Syracuse, New York

*/s/ Frederick J. Scullin*
Frederick J. Scullin, Jr.
Senior United States District Court Judge